Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, CA  94304
Telephone:   (650) 849-6600
Facsimile:   (650) 849-6666

Julia Anne Matheson (SBN 214163)
julia.matheson@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Telephone:   (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Universal Audio, Inc.

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL AUDIO, INC., | **CASE NO.** |
| Plaintiff, | **COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, FALSE ADVERTISING, AND UNFAIR COMPETITION** |
| v. | |
| EARBYTE, INC. d/b/a ANTELOPE AUDIO. | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMPLAINT
Case No. _____

## COMPLAINT

Plaintiff Universal Audio, Inc. ("Universal Audio") by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     This is an action for trademark counterfeiting, trademark infringement, false advertising, and unfair competition under federal, state, and/or common law. Universal Audio brings this action against Earbyte, Inc. d/b/a Antelope Audio ("Defendant") because Defendant is offering and selling sound recording and mixing software under Universal Audio's HELIOS and 1176LN marks.  Defendant also falsely represents to inquiring users in online forums that its products are of equal quality and sophistication, and will produce the same sound quality as, Universal Audio's products.  Defendant's plan is obvious and inescapable:  to trade off the goodwill Universal Audio has labored to build since its inception in 1958 by duping customers into thinking Defendant's products are made or licensed by Universal Audio.  The harm to the Universal Audio and its HELIOS and 1176LN brands could not be more acute, particularly for a company like Universal Audio, which built its reputation on the development of high-quality audio recording products that revolutionized the recording industry.  Through this action, Universal Audio seeks to enjoin Defendant's continued unlawful use of its marks and to recover actual and statutory damages, Defendant's profits, and other relief, including attorneys' fees and costs.

## THE PARTIES

2.     Plaintiff Universal Audio is a California corporation with its principal place of business at 4585 Scotts Valley Drive, Scotts Valley, CA 95066.

3.     Defendant Earbyte, Inc. is a Michigan corporation with an address at 19785 West 12 Mile Road, Suite 61, Southfield, MI 48076.  Defendant's websites,

including its LinkedIn and Facebook pages, state that it is headquartered in Santa Monica, CA:



(https://www.linkedin.com/company/antelope-audio)



(https://www.facebook.com/AntelopeAudio/)

## JURISDICTION AND VENUE

4.     This action arises under the federal Trademark Act, 15 U.S.C. §§ 1051, *et seq.* and the related law of the state of California.  This Court has jurisdiction over the

1  subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331,
2  1338(a) and (b).

3      5.    This Court has personal jurisdiction over Defendant, and venue is proper
4  in this District pursuant to 28 U.S.C. § 1391(b) and (c), because Universal Audio is
5  being harmed in this District; Defendant is doing business in this District (including
6  marketing its infringing products at trade shows occurring in this District); and a
7  substantial portion of the activity about which Universal Audio complains has taken
8  place in this District.

9          **UNIVERSAL AUDIO AND THE SOUND RECORDING INDUSTRY**

10      6.    Every sound recording reflects the work of more than just the performing
11  artist on the cover.  Behind every sound recording are sound engineers and specialized
12  recording equipment used for mixing, amplifying, overdubbing, adding effects (like
13  artificial reverberation), and melding of the sounds and audio impressions that
14  contribute fundamentally to the overall composition the public recognizes as a single
15  work.

16      7.    Universal Audio has been central to the sound recording industry since
17  its founding in 1958 by recording pioneer Bill Putnam Sr.  Following Putnam Sr.'s
18  sale of the underlying business of the original entity in the 1980s, his sons formed a
19  successor Universal Audio entity in 1999, with the intention of faithfully reproducing
20  the tools and sound from the prior generation's classic analog equipment in digital
21  form.  As a result, the Universal Audio has been associated for over 50 years with the
22  development of groundbreaking recording products and many of the innovations
23  coming out of the recording and sound reinforcement industry, including the
24  modern mixing console layout, per channel equalization, and effects connectors.

25      8.    Universal Recording Corporation, Putnam Sr.'s parallel recording
26  business, was central to the development of studio recording techniques.  For
27  example, it was the location of the first use of tape repeat in a recording, the first
28  isolated vocal booth, the first recording with multiple overdubs of a single voice, early

2

8-track recording trials, and the first experiments with half speed disc mastering. Universal Recording was responsible for hit recordings for artists like Muddy Waters, Chuck Berry, Count Basie, Ella Fitzgerald, Nat King Cole, and Duke Ellington.

9.     Before the introduction of computers and digital software technology, sound recordings were engineered and produced in recording studios on "analog" recording and mixing equipment.  Universal Audio's original analog 1176LN compressor—which reduces the volume of loud sounds and amplifies quiet ones—was designed in 1967 by Universal Audio's founder and was the first compressor to feature all-transistor circuitry and ultra-fast FET gain reduction.  It quickly became an industry favorite and was inducted into the TECnology Hall of Fame in 2008.

10.     In 1969, Abbey Road Studios' design engineer Dick Swettenham designed a new recording console called the Helios.  Although only manufactured in 1969 through 1979, the Helios became a musician's favorite, used to record and mix records by (among others) the Beatles, the Rolling Stones, Jimi Hendrix, Eric Clapton, Led Zeppelin, Pink Floyd, Queen, and the Who.  The 1969 version of the Helios was generally identified by the professionals of the period as the most advanced of the Helios models.

11.     With the significant technological advancements that have characterized the last several decades, much of the sound recording and producing business has now been digitized.  In addition to hardware, producers and sound engineers now utilize computer technology and various software plugins to achieve the effects previously available only through the use of prohibitively expensive, room-encompassing, analog equipment.

## UNIVERSAL AUDIO'S MARKS AND PRODUCTS

12.     Universal Audio's business and reputation was founded in its advancements in analog sound recording equipment.  More recently, Universal Audio has developed its reputation around the design and development of new digital recording tools that faithfully reproduce the sound, function, and look and feel of

COMPLAINT
Case No. _____

1   vintage analog recording equipment.  Universal Audio is a market leader in the
2   design, production, and sale of hardware and software that allow users to digitally
3   produce recordings with the features and sound quality of those produced on historical
4   analog equipment.

5       13.   Among Universal Audio's most popular products are the HELIOS and
6   1176LN plugins.  The 1176LN plugin was first introduced in 2001 and was designed
7   to produce the look, feel, and sound of the 1176LN compressor originally developed
8   by Universal Audio's founder.  Universal Audio's 1176LN plugin inspired a decade
9   of analog simulation software.

10      14.   Universal Audio introduced the HELIOS Type 69 EQ plugin in 2007 to
11  critical acclaim and great commercial success.  Universal Audio's HELIOS plugin is
12  an exacting emulation of the EQ section of the Type 69 Helios recording console
13  which allows users to track and mix recordings with an EQ modeled from the original
14  Helios console.

15      15.   Universal Audio has continuously used the 1176LN mark in commerce
16  since 2001 and has continuously used the HELIOS mark in commerce since 2007.

17      16.   Universal Audio owns the following valid and subsisting U.S. trademark
18  registrations for its HELIOS and 1176LN marks (the "Universal Audio Marks"):

| Mark | Goods | Reg. No./ Reg. Date | First-Use Date |
|------|-------|---------------------|----------------|
| HELIOS | Computer software emulating audio equalizers; computer software for manipulating digital audio information for use in audio media applications; user manuals supplied as a unit with the aforementioned computer hardware and software in Class 9. | 4485441<br><br>02/18/2014 | 03/2007 |

4

| Mark | Goods | Reg. No./ Reg. Date | First-Use Date |
|------|-------|---------------------|----------------|
| 1176LN | Computer software for manipulating digital audio information for use in audio media applications; user manuals supplied as a unit with computer software in Class 9. | 3836249<br><br>08/17/2010 | 05/2001 |

17.   Universal Audio's U.S. Registration No. 3836249 is incontestable.

18.   Universal Audio's products are sold online and through music stores such as Sweetwater Music Instruments & Pro Audio, Guitar Center, and Musician's Friend. Its products are also available through online retailers like Amazon.  Universal Audio offers products and plugins for every experience level:  professional sound producers/engineers, semi-professionals, and, most recently, hobbyists/amateurs. Universal Audio's products, including the HELIOS and 1176LN plugins, have enjoyed considerable critical and commercial success across the United States.

19.   The HELIOS and 1176LN marks are used in various ways, including on Universal Audio's website, www.uaudio.com, in its advertising, and within the plugin interfaces themselves, e.g.:





20.     Universal Audio's software plugins are bundled and sold in conjunction with its sound recording and mixing hardware.  Purchase of Universal Audio's hardware gives customers access to Universal Audio's various software plugins, all of which emulate historical analog equipment.  Customers are thus accustomed to encountering the Universal Audio Marks in co-branded settings, e.g.:



From project studios to multi-platinum mix engineers, UAD Powered Plug-Ins have been winning over audio professionals for more than 15 years with their stunning analog sound. The UAD library now features more than 90 plug-ins, co-created with the biggest brands in audio. Developed by UA's world-renowned team of DSP engineers, UAD plug-ins set the standard by which all other audio plug-ins are judged.



COMPLAINT
Case No. _____



21.   Universal Audio devotes substantial time, effort, and resources annually to advertising, marketing, and promoting its products and brands—including the 1176LN and HELIOS plugins—through a variety of digital and print media, such as print advertisements in industry publications (e.g., *Sound on Sound, Mix Magazine, Recording Magazine,* and *Tape-Op*), online via key recording industry retailers and publishers, through social media, in its catalogs, point-of-sale displays, sponsorships, and industry trade shows (e.g., NAMM, the National Association of Music Merchants held annually in January, and AES, the Audio Engineering Society held every October).

22.   Universal Audio's painstaking efforts to recreate the sound of analog recording equipment have been repeatedly recognized by critics, artists, and the industry at large.  Numerous Grammy-winning and nominated producers record and mix albums using Universal Audio's products, including:  Jimmy Douglass (Pharrell, Timbaland, John Legend), Ryan West (Eminem, Kanye West, Kid Cudi), and Carl Glanville (U2, Billy Joel, Counting Crows).

23.   In addition to its own advertising and promotional activities, Universal Audio, its marks, and its products have received significant unsolicited media coverage, attention, and praise.

7

24.     As a result of the Universal Audio Marks' distinctive nature and inherent strength, widespread use, advertising, publicity, promotion, and sizable sales, the marks were well-known since long before Defendant began its unlawful acts.  The Universal Audio Marks serve as a succinct symbol of Universal Audio and its products, namely digital recording software emulating the sound, spirit, and quality of classic analog recording technology.

## **DEFENDANT AND ITS WRONGFUL ACTS**

25.     Defendant is Universal Audio's competitor in the audio equipment manufacturing space.  Like Universal Audio, Defendant endeavors to sell its sound recording software plugin products to the professional, amateur, and hobbyist consumer.

26.     Defendant has a history of modeling its plugin products after industry leaders (such as Universal Audio) and branding its products, without permission or authorization, using competitor's trademarks.

27.     This action seeks relief from Defendant's current marketing and sale of competing sound recording and mixing software under the Universal Audio Marks.

28.     In particular, and as part of its Orion Studio, Orion 32+, Zen Tour, and Goliath products, all of which are marketed to and available for purchase by consumers in the U.S., Defendant offers plugins identified by the Universal Audio Marks.

29.     Like Universal Audio's plugins, Defendant's competing products display the Universal Audio Marks within the plugin interface, e.g.:

COMPLAINT
Case No. _____



(http://en.antelopeaudio.com/products/zen-tour/)

30.     In April 2016, Universal Audio advised Defendant (through European counsel) of its trademark rights and objected to Defendant's use of certain trademarks,

1   including 1176LN in Europe.  That matter was favorably resolved relative to the

2   European market.

3       31.    In or around October 2016, Defendant's technical support representative

4   confirmed in a conversation with Universal Audio's third-party investigator that

5   despite the European dispute, Defendant nevertheless continues to offer HELIOS 69

6   and 1176LN plugins with its Orion Studio, Orion 32+, Zen Tour, and Goliath

7   products.

8       32.    In or around October 2016, Defendant exhibited its infringing products,

9   including products bearing the HELIOS mark, at the AES trade show in Los Angeles,

10  CA:



23      33.    In its product marketing and on social media, Defendant has repeatedly

24  and falsely asserted that its products are comparable or identical to the corresponding

25  Universal Audio plugins.  To the contrary, Defendant's products are of demonstrably

26  inferior quality and do not emulate the sound quality of the analog hardware with the

27  accuracy of Universal Audio's products.

28

10

COMPLAINT
Case No. _____

## INJURY TO THE PUBLIC AND UNIVERSAL AUDIO

34.   Defendant's unauthorized use of the Universal Audio Marks is likely to cause confusion, mistake, and deception as to the source or origin of Defendant's products, and is likely to falsely suggest a sponsorship, connection, or association between Defendant, its products, and/or its commercial activities with Universal Audio.

35.   Defendant's false statements that its software plugins are comparable or identical to the corresponding Universal Audio plugin misrepresents the nature, characteristics, and qualities of its products and Universal Audio's products.

36.   Defendant's unauthorized use of the Universal Audio Marks and its false statements about the nature and quality of its and Universal Audio's products have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Universal Audio, its reputation and goodwill, the Universal Audio Marks, and the public's interest in being free from confusion.

37.   Defendant knows that its use of the Universal Audio Marks is neither permitted nor authorized.  As a result, Defendant has acted knowingly, willfully, in reckless disregard of Universal Audio's rights, and in bad faith.

### FIRST CLAIM FOR RELIEF

### Federal Trademark Counterfeiting Under

### Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d)

38.   Universal Audio repeats and realleges each and every allegation set forth above.

39.   Defendant has used and continues to use counterfeits of Universal Audio's federally registered marks, listed in Paragraph 16, which cover computer software for manipulating digital audio information, in connection with the sale, offering for sale, and distribution of computer sound recording and mixing software in violation of Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d).

11

**SECOND CLAIM FOR RELIEF**

**Trademark Infringement Under**

**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

40.     Universal Audio repeats and realleges each and every allegation set forth above.

41.     Without Universal Audio's consent, Defendant used and continues to use in commerce reproductions, copies, and colorable imitations of Universal Audio's registered HELIOS and 1176LN marks in connection with the offering, distribution, and advertising of computer sound recording and production software, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**THIRD CLAIM FOR RELIEF**

**Trademark Infringement, False Designation**

**of Origin, Passing Off, and Unfair Competition**

**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

42.     Universal Audio repeats and realleges each and every allegation set forth above.

43.     Defendant's use of the Universal Audio Marks, as described above, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant, its products, and/or its commercial activities by or with Universal Audio, and thus constitutes trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**FOURTH CLAIM FOR RELIEF**

**False Advertising Under Section**

**43(1)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**

44.     Universal Audio repeats and realleges each and every allegation set forth above.

12

45.     Defendant's use of the Universal Audio Marks, and false statements that its products are comparable or identical to Universal Audio's products in its commercial advertising and/or promotions, as described above, misrepresent the nature, characteristics, and qualities of Defendant's goods, services, or commercial activities in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 43(a)(1)(B).

**FIFTH CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Section 17200 _et seq._ of the Cal. Bus. & Prof. Code**

46.     Universal Audio repeats and realleges each and every allegation set forth above.

47.     In connection with the sale and distribution of infringing services and products, Defendant has engaged in unfair methods of competition, including unlawful, unfair, and/or fraudulent acts or practices in the conduct of trade and commerce in violation of Section 17200 _et seq._ of the Cal. Bus. & Prof. Code.

**SIXTH CLAIM FOR RELIEF**

**Violation of California's False Advertising Law**

**Section 17500 _et seq._ of the Cal. Bus. & Prof. Code**

48.     Universal Audio repeats and realleges each and every allegation set forth above.

49.     Defendant disseminated advertising that (a) contained statements that were deceptive, untrue, or misleading; (b) Defendant knew, or in the exercise of reasonable care should have known, were deceptive, untrue, or misleading; (c) concern Defendant's personal property or services and their disposition or performance; and (d) were likely to mislead or deceive a reasonable consumer.

50.     The illegal, untrue, and/or misleading statements and misrepresentations made by Defendant include, but are not limited to, Defendant's statements on various

13

1  online forums that its products are comparable or identical to the corresponding

2  Universal Audio plugin.

3       51.    Defendant's practices are designed to induce consumers to purchase

4  Defendant's products over Universal Audio's, under the guise that Defendant's

5  products will produce the same sound quality as the Universal Audio products they

6  mimic.

7       52.    As a result of Defendant's actions, consumers purchase Defendant's

8  products in lieu of Universal Audio's.  Universal Audio has suffered a direct injury

9  and lost money or property, and is thus entitled to injunctive relief.

10  **SIXTH CLAIM FOR RELIEF**

11  **<u>Common-Law Trademark Infringement and Unfair Competition</u>**

12       53.    Universal Audio repeats and realleges each and every allegation set forth

13  above.

14       54.    The activities described above constitute common-law trademark

15  infringement and misappropriation of the goodwill associated with the Universal

16  Audio Marks and constitute unfair competition in violation of California common

17  law.

18  **<u>JURY DEMAND</u>**

19      Pursuant to Fed. R. Civ. P. 38, Universal Audio respectfully demands a trial by

20  jury on all issues properly triable by a jury in this action.

21  **<u>PRAYER FOR RELIEF</u>**

22      WHEREFORE, Universal Audio requests that this Court enter judgment in its

23  favor on each and every claim for relief set forth above and award it relief including,

24  but not limited to, the following:

25      A.    An Order declaring that Defendant's use of the Universal Audio Marks

26  infringes Universal Audio's rights in those marks and constitutes trademark

27  counterfeiting, trademark infringement, and unfair competition under federal and/or

28  state law, as detailed above.

14

B.     An Order declaring that Defendant's statements that its products are comparable or identical to the corresponding Universal Audio plugin constitutes false advertising under federal and/or state law, as detailed above.

C.     A permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.     From using or registering the Universal Audio Marks and/or any other marks, logos, or designs that are confusingly or substantially similar to the Universal Audio Marks;

2.     From representing by any means whatsoever, directly or indirectly, that any products offered by Defendant, or any activities undertaken by Defendant, are associated or connected in any way with Universal Audio or sponsored or authorized by or affiliated with Universal Audio; and

3.     From representing by any means whatsoever, directly or indirectly, that any product offered by Defendant is comparable or identical to the corresponding Universal Audio plugin (e.g., by stating or implying that Defendant's products produce the same sound quality as Universal Audio's products).

D.     An Order directing Defendant to, within thirty (30) days after the entry of the injunction, file with this Court and serve on Universal Audio's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

E.     An Order directing Defendant to immediately destroy all products, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain or bear the Universal Audio Marks and/or any other marks, logos, or designs that are confusingly or substantially similar to the Universal Audio Marks.

COMPLAINT
Case No. _____

1    F.    An Order requiring Defendant to account for and pay to Universal Audio
2  any and all profits arising from the foregoing acts, and increasing such profits,
3  including trebling them, in accordance with 15 U.S.C. § 1117 and other applicable
4  laws.

5    G.    An Order requiring Defendant to pay Universal Audio damages in an
6  amount as yet undetermined caused by the foregoing acts, and trebling such damages
7  in accordance with 15 U.S.C. § 1117 and other applicable laws.

8    H.    An Order requiring Defendant to pay statutory damages in accordance
9  with 15 U.S.C. § 1117(c) of up to $2,000,000 for each type of product sold, offered
10  for sale, or distributed by Defendant under the HELIOS mark.

11    I.    An Order requiring Defendant to pay statutory damages in accordance
12  with 15 U.S.C. § 1117(c) of up to $2,000,000 for each type of product sold, offered
13  for sale, or distributed by Defendant under the 1176LN mark.

14    J.    An Order requiring Defendant to pay Universal Audio punitive damages
15  in an amount to be determined due to the foregoing willful acts of Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
Case No. _____

1

2    K.  An Order requiring Defendant to pay Universal Audio its costs and

3 attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

4    L.  Other relief as the Court may deem just and appropriate.

5

6 Dated: January 11, 2017   Respectfully submitted,

7

8            */s/ Morgan E. Smith*

9            Morgan E. Smith (SBN 293503)
             morgan.smith@finnegan.com

10           **FINNEGAN, HENDERSON, FARABOW,**
             **GARRETT & DUNNER, LLP**

11           3300 Hillview Avenue
             Palo Alto, CA  94304

12           Telephone:  (650) 849-6600
             Facsimile:   (650) 849-6666

13

14           Julia Anne Matheson (SBN 214163)
             julia.matheson@finnegan.com

15           **FINNEGAN, HENDERSON, FARABOW,**
             **GARRETT & DUNNER, LLP**

16           901 New York Avenue, N.W.
             Washington, D.C.  20001-4413

17           Telephone:  (202) 408-4000
             Facsimile:   (202) 408-4400

18

19           Attorneys for Universal Audio, Inc.

20

21

22

23

24

25

26

27

28

COMPLAINT
Case No. _____